UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RASHARI N'ZINGA SHARP**,<br><br>Plaintiff,<br><br>v.<br><br>**THOMAS J. VILSACK, SECRETARY OF THE UNITED STATES DEPARTMENT OF AGRICULTURE**,<br><br>Defendant. | Case No. 1:19-cv-2393 (TNM) |

### MEMORANDUM ORDER

Rashari Sharp filed this *pro se* civil rights action, alleging her colleagues and supervisor at the U.S. Department of Agriculture (USDA) discriminated against her because of her disability and retaliated against her when she reported that discrimination. The Secretary of Agriculture now moves for partial dismissal and partial summary judgment. The parties have submitted responsive briefing and the motion is now ripe for resolution. Considering the allegations in the Complaint, the briefing and summary judgment evidence, and the relevant law, the Court grants in part and denies in part the Secretary's motion.

### I.

Sharp worked as a Budget Technician in the USDA's Rural Development Program, Budget Branch. According to Sharp's Second Amended Complaint, she faced a "unified effort by the [a] Supervisor[], Budget Analysts, and coworkers to subject her to disparate treatment on the basis of false perceptions of her being hired as a Schedule A Authority Disabled Worker." SAC 2, ECF 46-1. Sharp's Complaint lists many acts she alleges constitute discrimination. They include:

- From September 2015 to March 2016, Sharp did not have her own phone and had to use a phone at another desk;
- Sharp's keycard access was either limited or revoked;
- Sharp was assigned to physically sorting "allotments" in the USDA's archives;
- USDA employees "disorganized" those allotments after Sharp had completed her work, requiring her to redo the work;
- Sharp had an allergic reaction to mold on the allotment folders, but her supervisor delayed providing her with gloves.

SAC 2–12 (Count II). Sharp also alleges those acts of discrimination—when taken together—created a hostile work environment, *id.* 2 (Count I), which became so severe it amounted to a constructive discharge, *id.* 33 (Count VII).

Sharp says she reported those discriminatory acts in a few ways. She submitted a self-evaluation during a performance review that contained an account of certain intra-office conflicts and her responses to those conflicts. SAC 12. She also filed two formal Equal Employment Office (EEO) complaints—the first in February 2017 and the second in January 2018. *Id.* 7. The USDA then allegedly retaliated against Sharp for reporting the discrimination by (1) delaying her promotion from grade 5 to grade 6, *id.* 12–14 (Count III); (2) reducing her promotion from a two-grade increase to a one-grade increase, *id.* (Count III); (3) publicly disclosing her private medical information, *id.* 15–20 (Count IV); through "miscellaneous acts of harm," *id.* 20 –26 (Count V); and through actions directed at interfering with Sharp's employment opportunities with other, prospective employers, *id.* 27–31 (Count VI). The USDA EEO investigated and adjudicated certain of Sharp's allegations, finding "[t]he weight of the evidence indicates discrimination and harassment did not occur." *See* ECF 1-1 (EEO Final Agency Decision).

Sharp then filed this action. *See* Compl. ECF No. 1. In her Second Amended Complaint, Sharp invokes Title VII, the Performance Rating Act of 1950, the Americans with Disabilities

2

Act of 1990, the Rehabilitation Act, the Family and Medical Leave Act, and the Fair Labor Standards Act.  SAC 3.  She alleges 14 types of discrimination and retaliation based on attention deficit disorder, mold allergy, concussion/traumatic brain injury, perceived disability, perceived gender/sex, anxiety/post-traumatic stress disorder, bipolar disorder, major depressive disorder, persistent depressive disorder, panic attacks, Hashimoto's autoimmune disorder/chronic lymphocytic thyroiditis, microadernoma/pituitary gland tumor on the brain, and prior EEO activities.  *Id.* 5.

The Secretary now moves for partial summary judgment and partial dismissal.  *See* ECF No. 57 (Def.'s Mot.).  He concedes that at least a couple claims survive to discovery.  *Id.*  The Court has jurisdiction and the motion is ripe for resolution.  *See* 28 U.S.C. § 1331.

**II.**

Because the Secretary's motion seeks dismissal in part and summary judgment in part, two standards apply here.

A defendant may move to dismiss a complaint on grounds that it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive such a motion, the complaint must allege facts—which, taken as true—state a plausible claim to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

A party may move for summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To establish a fact is not in dispute, a party may rely on "materials in the record, including depositions, documents . . . affidavits or declarations."  *Id.* 56(c)(1)(A).  A fact is "material" for

purposes of summary judgment if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hayes v. District of Columbia*, 923 F. Supp. 2d 44, 48 (D.D.C. 2013). Once the movant carries its burden, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

In considering the Secretary's motion, the Court remembers that Sharp is *pro se* and thus entitled to special solicitude in construing her claims. *See Hinds v. Mulvaney*, 296 F. Supp. 3d 220, 232 (D.D.C. 2018). But her opposition to summary judgment must still point to competent evidence showing a genuine issue for trial rather than mere unsupported allegations. *Id.*

### III.

Now to apply those standards here. Sharp's claims fall into roughly three categories: (A) a disparate-treatment claim; (B) a hostile workplace/constructive-discharge claim; and (C) several retaliation claims. The Court considers each in turn.

### A.

Recall that Sharp claims she suffered disparate treatment based on several different physical disabilities and ailments. SAC 5. Section 501 of the Rehabilitation Act provides the "exclusive remedy for federal employees alleging that federal agencies engaged in disability discrimination." *Rand v. Geithner*, 609 F. Supp. 2d 97, 100 (D.D.C. 2009); *see also* 29 U.S.C. § 791 *et seq*. At the motion to dismiss stage, a plaintiff makes out a cognizable Rehabilitation Act claim where she alleges that she suffered an adverse employment action because of her disability. *Brett v. Brennan*, 299 F. Supp. 3d 63, 72 (D.D.C. 2018).

The Act "limits judicial review to employees 'aggrieved by the final disposition' of their administrative 'complaint.'" *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006) (citing 29 U.S.C. § 794a(a)(1)). As part of the administrative-complaint process, a § 501 claimant must consult an agency EEO counselor within 45 days of the alleged discriminatory conduct. *See* 29 CFR § 1614.105(a)(1). That 45-day requirement, like a statute of limitations, is subject to equitable tolling and estoppel. *See Doak v. Johnson*, 798 F.3d 1096, 1105 (D.C. Cir. 2015).

The undisputed facts show Sharp did not exhaust her administrative remedies for most of the allegations underlying her claims of disparate treatment. Sharp contacted an EEO counselor on November 17, 2016. *See* ECF No. 40-3. So she exhausted only those claims arising out of conduct occurring on or after October 3, 2016, and before November 18, 2016.[1]

Seeking to avoid that conclusion, Sharp argues her failure to exhaust should be excused due to equitable considerations or under the "continuing violations" doctrine. *See* Opp. to Def.'s Mot. 41–42, ECF No. 50. Neither helps.

As for the first argument, Sharp misapplies the tolling provision in § 1614.105. That provision says, "[t]he agency or Commission shall extend the 45-day time limit" when, among other reasons, the claimant "was not notified of the time limits and was not otherwise aware of them" or "where the claimant was prevented by circumstances beyond [] her control from contacting the counselor within the time limits." 29 C.F.R. § 1614.105(a)(2).

---

[1] The USDA submitted a statement of material facts showing: (1) Plaintiff first consulted an EEO counselor on November 17, 2016; (2) Plaintiff filed formal EEO complaints against the USDA on February 22, 2017 and January 16, 2018, in which she claimed that the USDA had discriminated and retaliated against her based on disability, sex, and prior EEO activity; and (3) Plaintiff's EEO complaints did not challenge the handling or investigation of any prior EEO claims. *See* ECF No. 47-1. Sharp did not submit any response to the USDA's statement of fact, so the Court will treat those facts as conceded. *See* TNM Standing Order ¶ 14(b)(5), ECF No. 4 ("The Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such facts are controverted in the statement filed in opposition to the motion."). Thus, Sharp's argument that she contacted an EEO counselor earlier, on November 1, 2016, is not supported by the summary judgment evidence.

Sharp's own allegations shows she does not fall within either category. The Complaint alleges Sharp received a No Fear Act training informing her of the reporting requirement, so she cannot now claim to have been unaware of the 45-day limitations period. *See* SAC 32.[2] And nowhere does Sharp allege the kind of "affirmative acts or misleading statements" by the employer necessary to invoke the latter category. *Klugel v. Small*, 519 F. Supp. 2d 66, 73 (D.D.C. 2007); *accord Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 279 (D.C. Cir. 2003) (holding a plaintiff's "failure to allege any specific act or misleading statement by the defendant is problematic" to a claim for estoppel).

As for the second argument, the "continuing-violations" doctrine cannot salvage Sharp's unexhausted disparate-treatment claims. A continuing violation is "one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period." *Taylor v. FDIC*, 132 F.3d 753, 765 (D.C. Cir. 1997). The classic example is a hostile work environment claim, in which discriminatory conduct only becomes actionable after its "cumulative impact . . . reveals its illegality." *Id.* In such a case, it makes sense to set aside the 45-day requirement because the plaintiff could not make out a viable claim based on the initial discriminatory actions. But none of that applies to the kind of discrete allegations of discriminatory conduct at issue—in this type of case, "[e]ach discrete discriminatory act starts a

---

[2] Sharp does not formally allege sex-discrimination in any of her counts, but she does mention Title VII in her Complaint and some of the factual allegations arguably suggest sex-discrimination. In any case, Count II would not fare any better if the Court construed it as alleging sex-discrimination under Title VII. The 45-day requirement applies to Title VII, *see Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997), and similarly is not jurisdictional as to that statute, *see Nichols v. Truscott*, 424 F. Supp. 2d 124 (D.D.C. 2006) (noting "the failure to exhaust [a Title VII claim] is an affirmative defense that must be raised by the defendant"). So, in theory, Sharp could also invoke equitable tolling or estoppel to evade the 45-day requirement as to a Title VII claim. *See Washington v. Washington Metro. Area Transit Authority*, 160 F.3d 750, 753 (D.C. Cir. 1998) (noting that equitable principles favor tolling when a defendant "engaged in affirmative misconduct" or "misled a plaintiff about the running of a limitations period"). The Court finds Sharp has not pled facts justifying equitable tolling here, so any Title VII claim arising out of conduct outside the 45-day period is time-barred.

new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *accord Coleman v. Potomac Elec. Power Co.*, 310 F. Supp. 2d 154, 159–60 (D.D.C. 2004) (applying the same principle to retaliation claims).

The Government is thus entitled to summary judgment as to any disability-discrimination claims in Count II arising out of conduct occurring before November 18, 2016.

The only allegations of discriminatory conduct in Count Two specifically falling within the timely exhaustion period are: (1) budget analysts stole items off Sharp's desk; and (2) Sharp had to take Annual Leave one day because her supervisor said it took her an hour to come in. SAC 11. Even if those harms constitute "adverse actions," *Munro*, 839 F. Supp. 2d at 361, Sharp has not pled facts making plausible that those adverse actions were "because of" her disability. Other factual allegations in Count Two either fall outside the 45-day period or allege that discriminatory acts took place over an implausibly long period. *See, e.g.*, SAC 11 ¶ 56 (alleging that between *November 2016* and *July 2018* a contractor called Sharp "fruity," and a maintenance woman called her "weird"). Taken together, those remaining allegations do not state a claim for disability discrimination (or any other type of discrimination).

In sum, there is no genuine dispute that Sharp failed to satisfy the Rehabilitation Act's exhaustion requirement as to conduct falling outside the 45-day period from October 3, 2016 until November 17, 2016. The Secretary is therefore entitled to summary judgment on any disability-discrimination claims arising out of that period. *See* Fed. R. Civ. P. 56(a). The remaining, exhausted allegations do not state cognizable discrimination claims under any statute. Those claims are therefore dismissed. *See id.* 12(b)(6).

**B.**

Sharp also alleges the discrete acts underlying her disparate-treatment claim, when taken together, "led to intolerable work conditions." SAC 2. She also alleges those conditions were so intolerable that her resignation should be treated as a constructive discharge. *Id.* 33.

"To prevail on a hostile work environment claim, a plaintiff must show that [her] employer subjected [her] to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baird v. Gotbaum*, 663 F.3d 1246, 1250 (D.C. Cir. 2011). Sharp alleges a plethora of allegedly discriminatory acts occurring over a roughly three-year period, ranging from intentional tampering with her work product, denial of basic resources like a telephone, denial of reasonable accommodations for her medical conditions, and offensive comments about her perceived mental illness. She also alleges that because of the discriminatory conduct and the alleged inaction of the EEO on her formal complaints, she had to resign. The Court finds those allegations satisfy the low, initial bar at the motion to dismiss stage. The Secretary's motion is therefore denied as to Counts I and VII.

**C.**

The final category of claims is retaliation. Sharp alleges agents of the USDA unlawfully retaliated against her for protected EEO activity by: denying or delaying her promotion (Count III); disclosing her private medical information (Count IV); engaging in "miscellaneous acts of harm" (Count V); and by taking actions allegedly designed to undermine Sharp's future employment prospects (Count VI). SAC 12–32.

To advance a retaliation claim, Sharp must allege she (1) engaged in a statutorily protected activity; (2) suffered a materially adverse action by the employee's employer; and (3)

8

that a causal link connects the two. *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). An adverse action is one that "could [] dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

Sharp's retaliation claims are no model of clarity. Not only do the factual allegations supporting her reprisal claims span 20 pages; those allegations often seem more appropriately directed to unrelated theories of liability. But the Secretary concedes Counts IV and V each allege at least one plausible theory of recovery. *See* Reply 2, ECF No. 51. So, for the sake of efficiency, the Court will focus only on Counts III and VI. The remaining claims are better addressed after discovery, when Sharp will need to choose among the many, ambiguous theories of liability advanced in her Complaint and support them with competent evidence.

Start with Count III—the claim that Sharp was denied a promotion after submitting a self-evaluation. That claim fails because Sharp does not allege she engaged in a statutorily protected activity—the Complaint merely alleges she "submitted a list of accomplishments [to her Supervisor], which included her responses to being subjected to a multiplicity of different acts of harm on a daily basis." SAC 12.

Sharp herself told her supervisor that the list only "addressed how [she] responded to office conflicts." *Id.* at 13. Without more, the Court cannot draw a reliable inference that Sharp's report to her supervisor constitutes statutorily protected activity, rather than a report of routine intra-office disputes. *Cf. Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Libr. of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013) (dismissing retaliation claim for failure to specifically allege "that a particular employee . . . engaged in one of the statutorily protected activities"). While the Court acknowledges Sharp is *pro se*, she has had three opportunities to plead sufficient factual material supporting these claims and has failed to

9

do so.  Count III is therefore dismissed.

Now for Count VI.  In it, Sharp alleges several different types of harm: that a coworker tried to falsely implicate Sharp in a federal criminal investigation; that she was assigned a particular cubicle in a new office as part of the set-up; that the USDA EEO "fraudulently closed" her complaint "without giving her the opportunity to submit any of her evidence"; that the USDA monitored her through her work laptop and phone, as well as "personal laptop, phone, home, and places she visited"; that the USDA sought the help of, among others, Sharp's ex-husband and her landlord to help close this case; that items were stolen off her desk; that her timesheet was falsified to state she had attended a security training about theft; and that the Secretary himself defamed Sharp as "psychotic, belligerent, angry or hostile."  SAC 27–32.

These allegations are, on their face, implausible.  *Cf. Robinson v. Howard Univ.,* 335 F. Supp. 3d 13, 21 (D.D.C. 2018) ("Evaluating a motion to dismiss is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").  But even accepting them as true, nothing in the Complaint ties them to any protected EEO activities.  For example, Sharp has not alleged these harms took place shortly after reporting discrimination.  *Cf., e.g., Iyoha v. Architect of the Capitol*, 927 F.3d 561, 574 (D.C. Cir. 2019) ("A plaintiff can establish the 'causation' element of the prima facie case by showing a tight temporal proximity between protected activity and an adverse employment action."); *Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49, 81 (D.D.C. 2019) (denying dismissal where plaintiff alleged she was "was not allowed to work [an] event . . . even though the event was understaffed" shortly after reporting her rape).  Without more, the Court cannot draw a reliable inference that these multifarious acts of harm were caused by Sharp's protected activity.  Count VI is therefore dismissed.

**IV.**

For these reasons, it is hereby **ORDERED** that the Secretary's Partial Motion for Summary Judgment is **GRANTED** as to Count II, insofar as Sharp's claims in that count arise out of conduct occurring before October 3, 2016, or after November 17, 2016. The Secretary's Motion to Dismiss is **GRANTED** as to the remaining claims in Count II. Dismissal is further **GRANTED** as to all retaliation claims in Counts III and VI. The Partial Motion to Dismiss is otherwise **DENIED**.

    **SO ORDERED**.

Dated: February 15, 2022                          TREVOR N. McFADDEN, U.S.D.J.